BAKER, APPELLEE, *v.* CONTINENTAL TRANSPORTATION LINES, INC., APPELLANT.

(No. 10017—Decided April 24, 1967.)

*Messrs. Rosen & Rosen,* for appellee.
*Mr. Edward J. Utz,* for appellant.

HILDEBRANT, J. This is an appeal on questions of law from a judgment for plaintiff for damages for personal injuries entered by the court below upon a special verdict by the jury.

Plaintiff was a member, with twenty-two years' experience, of a crew of painters under supervision of a foreman on the job engaged in painting the under structure of the bridge

erected by federal and state co-operation over Marshall Avenue in the city of Cincinnati and designed to carry the north-south flow of traffic of Interstate route 75. Marshall Avenue at this point is a four-lane public thoroughfare carrying the flow of east-west traffic. The two curb lanes of Marshall Avenue had been barricaded with yellow barrels with yellow signs of approximately two feet by two feet, with red lettering warning "Danger Painters Overhead" with red arrows pointing overhead. This left the two center lanes of Marshall Avenue open to traffic, which were patrolled by the foreman and one helper checking the clearance and directing large trucks through the underpass when clearance was established, sometimes ordering the painters to hang on to a flange of an eyebeam so that without their weight the scaffolds would rise to permit necessary clearance.

Under the direction of the foreman the scaffolding erected by the crew was supported by cables, numbered for the record, one, two and three. Cable No. 1, which was struck by defendant's vehicle, was nearest the east end of the bridge toward Central Parkway, and cables numbered 2 and 3 were west of cable No. 1 and nearest toward the first street west of the bridge. Working in pairs, two men were on the scaffold supported by cables No. 1 and No. 2 over the south curb lane closed to east bound traffic, and the plaintiff and his partner were on the scaffold supported by cables Nos. 2 and 3 over the north curb lane closed to west bound traffic. Standing at work the painters could not see the area below nor traffic approaching thereon except when seated on the scaffold to receive paint and supplies by means of a rope from the foreman and a helper below. Approximately a minute before the accident herein, plaintiff had been supplied from below and while seated had observed the foreman in position to control and supply the other team and the helper in the position to supply his team. Plaintiff did not and could not see what happened, but the next thing he knew he had been precipitated to the ground and severely injured.

It is abundantly clear from the record that the operator of defendant's vehicle, his attention diverted by a pedestrian passerby, failed to observe the condition of the traveled area through which he was passing and the sag of the visible cable No. 1 with reference to clearance, so that he negligently drove his vehicle into cable No. 1 causing the accident precipitating

the painters to the ground and the resulting injuries to plaintiff.

Defendant requested a special verdict of the jury, and the court, dismissing the jury at 10:17 a. m., entered into elaborate careful discussions with counsel with reference to the manner and form of submission of a special verdict, which resulted in submitting the following determinative issues and special interrogatories to the jury:

"Q. Was the defendant, Continental Transportation, Inc., negligent in one or more particulars alleged in the petition?"

"Answer: Yes."

"If the defendant was so negligent, was such negligence a proximate cause of any injuries that plaintiff may have sustained?"

"Answer: Yes."

"Did the plaintiff assume the risk of any injuries that he might thereafter sustain when he went upon the suspended platform?"

"Answer: Yes."

"If the plaintiff assumed the risk of any injury that he might thereafter sustain when he went upon the suspended platform was such assumption of risk a proximate cause of any injury he sustained?"

"Answer: No."

"Was the plaintiff, Joseph Baker, negligent in any way?"

"Answer: Yes."

"If the plaintiff, Joseph Baker, was negligent in any way, was such negligence a proximate cause of any injuries which he sustained?"

"Answer: No."

"If, it is determined by the court from your answers to the questions in your special verdicts that the plaintiff is entitled to recover, what amount of money will compensate him for the injuries and damages, if any, which he sustained?"

"Answer: $100,000.00 (one hundred thousand dollars and no cents)."

"What was the distance between the underneath surface of the easternmost girder of the viaduct over Marshall Avenue and the cable beneath the girder?"

"Answer: 2 ft. 7-½ inches (approx.)."

"Did the plaintiff, Joseph Baker, with his fellow workers construct and maintain a cable over the roadway to leave a space

less than 12 feet, 5 inches above the surface of the roadway?"

"Answer: Yes."

"If you find the defendant was negligent, state what the negligence consisted of?"

"Answer: Did not exercise ordinary care, caution and did not observe existing conditions in the construction area."

The court refused to charge upon or submit a special verdict on the issue of nuisance, which refusal is defendant's second assignment of error. It is sufficient to say that the public authority engaged in the construction of I-75, of which this bridge is a part, is not subject to any statutory duty such as a municipality with reference to nuisance, and any interference with the traveling public in the use of the highway was a necessary, lawful and temporary interference while in the performance of a legal duty not coming within the definition or concept of nuisance.

Defendant's first assignment of error, the failure to withdraw the case from consideration by the jury at the close of plaintiff's case and to instruct a verdict or render judgment for the defendant, is based upon defendant's stated theory upon which defendant based its case, that when one undertakes to work in a place where the public has a right to be and which may endanger the movement of persons and vehicles in their use of such place, a duty is owed to such persons of adequate protection for such work. In support of such theory defendant cites *Richman Brothers Co.* v. *Miller*, 131 Ohio St. 424; *Warden* v. *Pennsylvania Rd. Co.*, 123 Ohio St. 304; *Jereb, Admx.*, v. *Riss & Co., Inc.*, 169 Ohio St. 178; and *Roettger* v. *John H. Hibben Dry Goods Co.*, No. 5608 in this court.

We consider the theory untenable here and the citations inapplicable. They apply to a situation in reverse. No one seeks damages from Baker, the worker, or from one in the position of an owner employing an independent contractor to do the work. The cases cited by defendant require only due care of the worker, and the issues submitted were negligence and contributory negligence, both of which were submitted in the case at bar.

Defendant's third assignment of error is: "The court was in error in failing to inform or in failing to give the special verdict to counsel before argument and in refusing to give to counsel before argument the special verdict which the court

was required to give by law in this case, prior to argument, and in failing to follow the findings of the special verdict." It is quite clear from the record of extended discussions between court and counsel concerning the determinative issues to be submitted that neither party nor counsel was prejudiced in the manner and form of the submission of the special verdict. Nor do we find any error by the court in disregarding the jury's verdict that plaintiff was guilty of assumption of risk but that his assumption of risk was not a proximate cause of his injuries.

The court submitted the issues of assumption of risk and proximate cause thereof without objection from plaintiff and at the request of defendant although correctly of the opinion that the doctrine was not an issue in the case.

It is clear from the record that plaintiff was not aware of any danger from the approach of defendant's truck, hence the doctrine could not apply and the jury verdict thereon was properly disregarded by the court, and, it having been erroneously submitted by the court at the request of defendant, no error prejudicial to defendant arises therefrom.

While the jury answered the question, "Was the plaintiff, Joseph Baker, negligent in any way," yes—they also answered that such negligence was not a proximate cause of any injuries to the plaintiff. No interrogatory testing of the answer as to plaintiff's negligence was propounded such as the one directed to defendant's negligence. We, therefore, find no error on the record in the submission of the special verdict with reference to the issue of contributory negligence.

Defendant's fourth assignment of error relates to the general charge and the reference to punitive damages. From a reading of the whole charge we find no error prejudicial to the defendant therein.

The court has carefully examined assignments of error five, six, seven and eight, and finds no error set forth therein prejudicial to the defendant.

After careful examination of the voluminous record and extensive briefs of counsel and the authority cited therein, we conclude no error prejudicial to defendant, appellant herein, appears on the record herein. The judgment is affirmed.

*Judgment affirmed.*

Hover, J., concurs.

LONG, P. J., dissenting. This case arises out of an accident which occurred on August 9, 1963, in the overpass area where Interstate route 75 passes over Marshall Avenue. The plaintiff, who was a painter for twenty-two years, was engaged with other painters in the painting of the underside of what we shall hereafter refer to as the bridge. The rigging by which plaintiff and his fellow workers reached the underside of the bridge was composed of spans of cables upon which the painters placed scaffolds where the men stood to do their painting. These cables ran from north to south, the general direction of Marshall Avenue being from east to west.

The testimony shows that plaintiff, with his fellow painters, erected the rigging with which they were all familiar. As a matter of fact, in one place in his testimony plaintiff uses the first person in describing the operation of erecting the cables; there is no question of plaintiff's familiarity and participation in the erection of the cables on the job on which he received his injuries.

Marshall Avenue is a four-lane highway—two of the lanes being blocked off because of incompleted road construction; the lanes nearest the center, east and west, were open for travel to the general public. The painting was being done to some sixteen girders with their beams which were 140 feet long. Painting had gone on for a week. Four painters, of which plaintiff was one, employed by the Campbell Contracting Company, were engaged in the painting operation.

Defendant's truck, traveling eastward, going at the rate of ten to fifteen miles per hour, cleared the first two cables but came in contact with the third cable, causing plaintiff to be thrown to the ground. Plaintiff received fractures of his pelvis, necessitating confinement in hospitals for different periods of time; there is no question that plaintiff's injuries are substantial.

The cables are clamped down on each end with steel clamps and are pulled tight by means of a ratchet which enables the painters to control the sag of the cables upon which their scaffolds are placed. The lanes of travel not in use had barrels or drums on them on which signs appeared bearing the following words: "Danger—Painters Overhead," with arrows pointing upward. These signs are put out by the painters each morning when the men start to paint.

As plaintiff was standing up, painting, his view was obstructed by the beams; he could not see east or west unless he sat down or stooped to look underneath the beams. As a result of this, the evidence indicates that plaintiff and his fellow painters were provided with guardsmen or flagmen whose duty it was to flag down trucks, such as the defendant's, to check the height of the truck to determine whether it could clear any cable which might be sagging. When a cable was sagging, the men on the platform of the sagging cable would remove their weight by grasping the flange of the beams and raising their bodies off the platform. The plaintiff testified he did not know whether the flagman were functioning or not at the time of the accident. The flagmen also had the duty of keeping the painters supplied with paint. This was provided by means of a rope. There is no dispute that, about a minute or less before the accident, one of the so-called guardsmen was supplying plaintiff with paint and that at that time plaintiff was painting over the north side of the bridge over the westbound lane.

At the speed at which the trailer truck of defendant was traveling, the driver negotiated about 135 feet of the underpass from the western to the eastern opening. He saw the signs. The state inspector, Carl Meyer, who was not one of the guardsmen or signal men and who was on the sidewalk and twenty-five feet west of the cable which was struck, after the truck cleared the first two cables yelled, "Stop! Hold it!" The truck stopped within ten to twelve feet and was over halfway out from under the underpass.

The defendant's claim that plaintiff created a nuisance by stretching cables over the highway is without merit. The state Highway Department ordered the painting done and furnished an inspector to check the performance thereof. The temporary interference with a portion of traffic on the highway does not constitute a nuisance.

The defendant makes the contention that plaintiff assumed the risk of anything that might happen to him because of the method he undertook in performing his job. This is not the law. Plaintiff did not assume the risk of injury by anyone using the highway in an unlawful manner. In *Ricks* v. *Jackson*, 169 Ohio St. 254, the second paragraph of the syllabus states as follows:

"One using a highway does not assume the risk of the negligent operation of a vehicle thereon where such one does not know of such negligent operation in sufficient time to avoid its consequences by the exercise of ordinary care."

In the opinion the court uses this language, however:

"It may be that the jury *could have found that plaintiff was negligent because he did not use ordinary care to avoid risks, even from the negligence of others, which he should in the* exercise of ordinary care have anticipated" (emphasis added), but there is no evidence tending to prove that plaintiff knew of the negligent operation of defendant's truck or even that he had an opportunity to know of it in time to do anything about it.

Coming now to the special verdicts and the matters which cause my dissent: The jury found that defendant was negligent, and properly so, and that such negligence was a proximate cause of the accident. The evidence is undisputed that the truck driver had his attention diverted by a pedestrian who was passing by, and this alone sustained the jury's finding that the driver "did not observe existing conditions *in the construction area.*" (Emphasis added.)

With reference to the special verdict finding that plaintiff assumed the risk, I think that there was no application of the doctrine of "assumption of the risk" in this case, as is pointed out, *supra.*

However, the jury did have this in mind when it found plaintiff was negligent; the only negligence of which the jury could have found plaintiff guilty was that he did not use ordinary care to avoid risks, even from the negligence of others, which he should in the exercise of ordinary care have anticipated. (*Ricks* v. *Jackson, supra.*) This is exactly what prompted the jury to find in its special verdict that Joseph Baker, the plaintiff, was negligent. The jury then finds that this negligence of the plaintiff was not a proximate cause of any injuries which plaintiff sustained. With this last finding of the jury I cannot agree. I think that this record is replete with evidence that plaintiff did not use ordinary care to avoid risks which his twenty-two years of similar experience dictate that he should, in the exercise of ordinary care, have anticipated. Plaintiff's negligence did not consist of conduct which terminated but which, nevertheless, thereafter contributed to cause the acci-

dent; his negligence was continuing down to the happening of the accident and, therefore, combining with the negligence of defendant, necessarily was a proximate cause of his injuries.

From the record, the testimony of plaintiff discloses the following:

"Q. You mean sometimes you raised the cable to let the trucks through? A. Yes.

"Q. You would hang on to the girder and get your weight off the scaffold so the cable would go up? A. I done that a couple of times to let trucks through."

Plaintiff also said he didn't know the clearance distance between the cables and the road beneath.

"Q. So that this truck of the Continental Transportation Lines, Inc., cleared the first cable, didn't it? A. Yes, sir, it had to."

In response to a question as to what he saw, his answer was: "Saw traffic coming underneath continually." "Cars—cars don't bother, they are low.

"Q. You saw trucks too, didn't you? A. Yes, I saw them stop when they came up and seen the signs and look out the window *to see if they were clearing the cable* and they would motion them through *if they would clear the cable.*" (Emphasis added.)

"I can't say whether the guards were there."

Speaking of the cable on which he was working, plaintiff testified: "When it would be sagging a little too much, I would tie up. There was a little more weight on that cable than on the others, so kept mine tied up into the structural steel."

I believe that this special verdict, that plaintiff was negligent but that his negligence was not a proximate cause of his injuries, is manifestly against the weight of the evidence. It is my considered judgment that the proximate cause of this accident was the combined negligence of defendant and plaintiff.

A new trial should be granted.